Cite as 2025 Ark. App. 553

# ARKANSAS COURT OF APPEALS

DIVISION III
No. CV-25-335

| | |
|---|---|
| MARK HUNT | Opinion Delivered November 19, 2025 |
| APPELLANT | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, TENTH DIVISION [NO. 60JV-21-646] |
| V. | |
| ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILD | HONORABLE SHANICE JOHNSON, JUDGE |
| APPELLEES | AFFIRMED |

### N. MARK KLAPPENBACH, Chief Judge

Mark Hunt appeals the March 2025 order terminating his parental rights to his then three-year-old daughter, MC. Hunt contends that the circuit court clearly erred in finding that termination was in MC's best interest because a less drastic alternative was available, specifically, placement with fit and willing relatives. We affirm.

MC was born in October 2021 to a drug-addicted mother and her live-in boyfriend, Hunt, who was present for the child's birth. MC was brought into Arkansas Department of Human Services (DHS) custody days after she was born. Two of MC's siblings were already in foster care and had been since January 2021 because they were not cared for (lice infestation, decayed teeth, etc.), both children had tested positive for methamphetamine among other drugs, and another child died while living with the mother and Hunt. The

mother was already being provided with DHS services, but she continued to test positive for methamphetamine.

Hunt claimed, unconvincingly, that he was unaware the mother was using illegal substances while she was pregnant with MC. MC was adjudicated dependent-neglected, although Hunt was not the cause for removal. By May 2022, Hunt had not yet established his paternity. The mother was minimally compliant, and DHS was faulted for having not used due diligence to find fit and willing relatives to care for MC. By December 2022, the mother was found to have failed to do anything toward reunification; Hunt had not maintained contact with DHS and had not appeared for intervening hearings; and DHS had failed to make appropriate efforts to find fit and willing relatives. In 2023, the mother's parental rights were terminated, which she did not appeal. Hunt was found to have failed to comply and had "not been involved in this case, at all." In November 2023, Hunt was incarcerated. An attorney was appointed for him.

In February 2024, the circuit court entered an order finding Hunt to be MC's biological father. In July 2024, the circuit court denied DHS's petition to terminate Hunt's rights; the current goals were custody with Hunt or adoption. The circuit court believed Hunt had prospects for being released from prison and rehabilitating his circumstances.

Although Hunt was released to a reentry program, he was remanded to prison after twenty-eight days because he violated the rules. In September 2024, the goals were changed to (1) guardianship or adoption with a fit and willing relative or (2) adoption. The circuit

court found that DHS had failed to make reasonable efforts to give Hunt services. Months went by, and Hunt remained in prison.

Following a February 2025 hearing, Hunt's parental rights were terminated. The circuit court found that DHS had proved two statutory grounds[1] and that it was in MC's best interest to terminate his parental rights, having considered the likelihood that MC would be adopted[2] and the potential harm to her.[3] Hunt was found to have squandered the opportunity to put himself in a position to provide a safe and stable home for his daughter. Hunt wanted DHS to pursue his adult children as potential guardians as a better alternative than termination, but the circuit court rejected that request. No relatives had come forth, expressed interest, or been approved as a permanent placement for MC. Hunt appeals the order terminating his parental rights.

We review termination-of-parental-rights cases de novo. *Robinson v. Ark. Dep't of Hum. Servs.*, 2024 Ark. App. 64, 684 S.W.3d 219. We will not reverse the circuit court's decision unless its findings are clearly erroneous. *Id.* An order terminating parental rights requires

---

[1]Hunt had been sentenced to ten years in prison, which would constitute a substantial period of three-year-old MC's life. Ark. Code Ann. § 9-27-341(b)(3)(B)(viii) (Supp. 2023). Also, there was little likelihood that further services would result in successful reunification. Ark. Code Ann. § 9-27-341(b)(3)(B)(ix).

[2]MC was highly likely to be adopted. The foster parent and her husband were interested, and DHS's adoption specialist had identified one hundred prospective adoptive matches.

[3]The circuit court found potential harm to the child by her continuing to languish in foster care and the potential of her being exposed to Hunt's admitted drug use (methamphetamine and marijuana).

findings by clear and convincing evidence that at least one of the statutory grounds is satisfied and that termination is in the child's best interest. *Id.* In making a best-interest determination, the circuit court is required to consider (1) the likelihood that the child will be adopted and (2) the potential harm to the child if custody is returned to a parent. *Id.* Credibility determinations are left to the finder of fact. *Id.*

Hunt does not contest statutory grounds or that he would be unable to take custody of MC at any time in the foreseeable future. He also concedes that his prison sentence constitutes a substantial period of MC's life. Instead, Hunt argues that DHS's failure to seek out fit and willing relatives undermines the circuit court's best-interest finding. Hunt asserts that MC has an interest in preserving her familial relationships, which was nullified by the termination of her father's parental rights. Hunt questions whether DHS's failure to abide by its obligation to find fit and willing relatives has any meaning or consequences. He adds that allowing MC to remain in foster care with the same people who were interested in adopting her would be no detriment to MC and at least give a chance for a fit and willing relative to come forward to care for MC. Hunt has failed to demonstrate reversible error.

We are mindful that in dependency neglect cases the preference is to obtain guardianship or adoption with a fit and willing relative over adoption. *See Borah v. Ark. Dep't of Hum. Servs.*, 2020 Ark. App. 491, 612 S.W.3d 749; Ark. Code Ann. § 9-27-338(c)(4) & (5) (Repl. 2020). The relative preference outlined in the statute must be balanced with the individual facts of each case. *Robinson, supra.* Preference must be given to the least restrictive disposition consistent with the best interest and welfare of the juvenile and the public. *See*

4

*Lei'Keil v. Ark. Dep't of Hum. Servs.*, 2025 Ark. App. 324, 714 S.W.3d 319; *Borah*, *supra*; Ark. Code Ann. § 9-27-329(d) (Supp. 2023). Termination of parental rights severs any biological familial relationship because a relative's rights are derivative of the biological parent's rights; the former relatives become legal strangers to the child. *Id.* On the other hand, to make a least-restrictive-placement argument on appeal, there must be at a minimum an appropriate and approved relative in the picture. *Alexander v. Ark. Dep't of Hum. Servs.*, 2023 Ark. App. 536, 679 S.W.3d 450.

At the termination hearing, Hunt said that he had not contacted any family members to see if they would be willing to be a placement option for MC. He had not had in-person contact with his four adult children for about ten years, and he had not told them about MC's existence. The DHS caseworker confirmed that two of Hunt's adult children, those children's mother, and Hunt's sister were contacted, but no one expressed interest in taking MC. The caseworker had called Mr. Hunt's sister the night before the termination hearing. More than ten other people had been identified as potential relatives, and efforts were made to notify them about MC's situation, but none responded expressing interest in having MC in their home.

DHS's efforts to find fit and willing relatives might not have been ideal, but Hunt made no efforts whatsoever. None of Hunt's relatives were "in the picture" for purposes of waiting to see if MC's relatives could be a suitable placement. On de novo review of this record, we are not convinced that the circuit court clearly erred in finding that termination of Hunt's parental rights to MC was in the child's best interest.

Affirmed.

BARRETT and HIXSON, JJ., agree.

*Leah Lanford*, Arkansas Commission for Parent Counsel, for appellant.

*Kaylee Wedgeworth*, Ark. Dep't of Human Services, Office of Chief Counsel, for appellee.

*Dana McClain*, attorney ad litem for minor child.